2026 IL App (1st) 251138-U

No. 1-25-1138

Third Division
August 12, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| POTOMAC GROUP, INC., an Illinois Corporation, | ) | |
| | ) | |
| Plaintiff and Counterdefendant-Appellant, | ) | |
| | ) | |
| v. | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| DAVID PEZZOLA, BRIAK SAK, and NETWORK | ) | |
| TITLE, LLC, an Illinois Limited Liability Company, | ) | No. 2019 CH 13463 |
| | ) | |
| Defendants | ) | The Honorable |
| | ) | Daniel J. Kubasiak, |
| (David Pezzola, | ) | Judge Presiding. |
| Defendant and Counterplaintiff-Appellee, | ) | |
| | ) | |
| Brian Sak and Network Title, LLC, | ) | |
| Counterdefendants). | ) | |
| | ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Martin and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held:*  The circuit court's judgment is reversed in part, affirmed in part, and vacated in part where (1) summary judgment in favor of the defendant buyer concerning the real estate transaction at issue should not have been granted due to the presence of multiple questions of material fact; (2) denial of the plaintiff seller's motion for summary judgment was proper for the same reason; (3) given the result concerning the complaint, summary judgment concerning the defendant buyer's counterclaim

was similarly inappropriate; and (4) the defendant buyer's request for attorney fees is vacated as premature.

¶ 2 The instant appeal arises from a failed real estate transaction between plaintiff Potomac Group, Inc. (Potomac), and defendant David Pezzola. The circuit court granted summary judgment in favor of Pezzola with respect to a $50,000 earnest money deposit, finding that Potomac breached the contract between the parties, and also granted Pezzola attorney fees and costs. Potomac now appeals, contending that the circuit court erred in granting summary judgment to Pezzola instead of Potomac, in denying Potomac's post-summary judgment motions to amend, and in awarding Pezzola attorney fees. For the reasons set forth below, we reverse the grants of summary judgment in Pezzola's favor, affirm the denial of summary judgment with respect to Potomac, vacate the fee award, and remand for further proceedings.

¶ 3 BACKGROUND

¶ 4 *Complaint and Amended Complaints*

¶ 5 On November 20, 2019, Potomac filed a complaint in the circuit court of Cook County against defendants Pezzola and Brian Sak concerning a proposed sale of real estate; the complaint was amended several times, and it is the verified third amended complaint which is at issue on appeal. The third amended complaint alleged that, on March 18, 2019, Potomac entered into a real estate purchase and sale contract (the March contract) with "Brian Sak or nominee" with respect to 25 vacant residential lots in Olympia Fields; the purchase price was $750,000, with a $50,000 earnest money deposit tendered to nominal defendant Network Title, LLC (Network Title), as escrowee. Pezzola signed the March contract on behalf of the buyer. The March contract had no mortgage contingency clause and was scheduled to close on or before March 21, 2019. At the time of signing the March contract, Potomac did not hold title to the property, but had a prior agreement in place to purchase the property from Otoniel

Sanchez, its owner. The third amended complaint alleged that Potomac intended to close on its purchase with Sanchez, then close on its sale under the March contract, and alleged that "[a]t all times pertinent, based on its agreement with Sanchez, Potomac was able and willing to perform all its obligations required by the Contract, including transferring title of the Vacant Lots to Buyers."

¶ 6    On March 20, 2019, Sak contacted Potomac's manager and informed him that they would not close on March 21, 2019, as they wanted different lots than they had previously agreed to purchase; Pezzola also confirmed to the manager that they wished to purchase the different lots. The third amended complaint alleged that, "[d]espite having no obligation to do so, and without waiving any rights it had under the Contract, Potomac attempted to accommodate the new request," and a new proposed agreement was prepared specifying the new lots. The new proposed agreement provided that closing would take place on April 12, 2019, and in anticipation of that closing date, Potomac also scheduled its closing on the purchase of the lots from Sanchez for the same date. At 8 p.m. on April 11, 2019, however, Potomac was notified by the buyers' counsel that the April 12 closing would not be taking place.

¶ 7    On April 25, 2019, Potomac was informed by the buyers' counsel that " 'the deal is back on,' " with a scheduled closing date of April 26, 2019. Pezzola wired Network Title an additional $325,000 toward the purchase price in connection with the rescheduled transaction. Despite the fact that there was never any financing contingency, the buyers again refused to close, with Pezzola claiming an inability to secure financing. "Without obligation," Potomac authorized the return of the $325,000, but refused to return the $50,000 earnest money payment.

¶ 8        The third amended complaint alleged that Pezzola and Sak breached the March contract by failing to close on the purchase, and sought damages of $595,000, which was the profit Potomac would have received from the completed sale.

¶ 9                                    *Counterclaim*

¶ 10        In response to Potomac's lawsuit, Pezzola filed a verified counterclaim against Potomac, Sak, and Network Title, in which he alleged that, on April 3, 2019, he and Potomac entered into a contract for the sale of the vacant residential lots (the April contract); at the time that they entered into the April contract, Potomac did not own the real estate that was the subject of the contract. The counterclaim alleged that, "[p]ursuant to an earlier iteration of Pezzola's and Potomac's agreement for the vacant lots," he had deposited $50,000 in earnest money with Network Title, which "was to become non-refundable on April 12, 2019," under the terms of the April contract. The April contract further provided that the attorney review and inspection period would remain open "until the parties reached a resolution on all outstanding issues or one party provided written notice of termination to the other party." One such "outstanding issue" was Potomac's ownership of the property. Under the April contract, the closing date was to be five business days after the date on which Pezzola received a written commitment for financing.

¶ 11        The counterclaim alleged that, on April 11, 2019, he provided written notice to Potomac that he was unable to obtain financing and was terminating the April contract effective immediately, and requested the return of the earnest money. Potomac refused to return the earnest money, which Pezzola alleged constituted a breach of contract. Pezzola accordingly requested a return of his earnest money, prejudgment interest, and attorney fees as provided in the April contract.

4

¶ 12                                   *Contracts*

¶ 13          The alleged contracts at issue are included in the record on appeal. As relevant to the instant appeal, the March contract indicates that the contract is between "Brian Sak or nominee" and Potomac, and concerns lots 5 and 6-30. The purchase price is listed as $750,000, and a $50,000 earnest money deposit is required to be wired to Network Title. All language on the preprinted form which discusses refundability of the earnest money deposit and mortgage contingency has been stricken, with a line drawn through it. The March contract provides that the closing shall occur on or prior to March 21, 2019, and that "Seller must provide Buyer with good and merchantable title prior to Closing." The March contract provides an attorney review period of two business days after the acceptance date, during which the parties' attorneys may propose written modifications. The March contract was signed on March 18, 2019, by Potomac's president on behalf of the seller and by Pezzola on behalf of the buyer.

¶ 14          The April contract appears to be the same document as the March contract, but with alterations inserted. The April contract indicates that it is between "David Pezzola or assignee" and Potomac, and concerns lots 3-8 and 13-30. The purchase price and earnest money requirements remain the same, but a typed sentence has been inserted which provides "The Earnest Money shall become non-refundable on April 12, 2019." The inserted language has been initialed by one individual, whose initials also appear on the bottom of the page next to "Seller Initials." The April contract provides that the closing date is to be "10 Business days after the Effective Date." There is no date listed on the contract for the "offer date," but Pezzola's signature appears under "Buyer's Signature." There is no signature on the "Seller's Signature" line, but the same initials as earlier appear on the bottom of the page next to "Seller Initials."

¶ 15    The April contract also has an additional page entitled "General Provisions." As relevant to the instant appeal, paragraph D concerns the service of notices and provides that "E-mail notices shall be deemed valid and received by the addressee when delivered by e-mail and opened by the recipient, provided that a copy of the e-mail notice is also sent by regular mail to the recipient on the date of transmission."

¶ 16    In addition, there is a rider which provides that it is a "Rider ('Rider') to Chicago Association of Realtors Vacant Land Purchase and Sale Contract dated March __, 2019 ('Contract') by and between Owner of Record/Potomac Group, Inc. ('Seller') and Brian Sak or Assignee ('Purchaser') for the property commonly known as those certain vacant lots (collectively the 'Property') more particularly described on that certain title commitment issued by Network Title LLC and identified as Commitment no. 19035026IL (the 'Commitment')."[1] The rider provides that the attorney review period is to remain open "until the parties reach a resolution on all outstanding issues or one party provides written notice of termination to the other party in accordance with the Contract." The rider also provides that "the Closing Date shall be five (5) business days after the date in [*sic*] which Purchaser receives a written commitment for financing." In addition, the rider indicates that notices to the parties must be served on the parties' attorneys and "[are] sufficient if delivered by facsimile or email." The rider further provides that, in the event of a seller breach, the purchaser is entitled to a refund of the earnest money and that the prevailing party in any action related to any breach or threatened breach of the contract " 'will be entitled to recover from the other party all reasonable legal fees and expenses incurred by it in enforcing its rights under the Contract.' "

---

[1] We note that the record demonstrates that this title commitment was dated March 14, 2019, and concerned lots 6-30, which were lots listed in the March contract.

The rider contains three paragraphs which have handwritten comments, one of which is next to a paragraph which has been crossed out with the word "denied" written next to it. The final page of the rider, which contains the signature line, includes the undated signature of the "Seller/Owner of Record" but contains no signature on the line for "Brian Sak."

¶ 17    Finally, the contract between Sanchez and Potomac is dated January 23, 2019, and concerns the purchase of all of the vacant lots listed in the March and April contracts. The contract provides that the closing is scheduled for March 25, 2019, at which point "Seller will transfer title to the Property to Buyer." The contract was signed by both Sanchez and by Potomac's president.

¶ 18                    *Motions for Summary Judgment—Third Amended Complaint*

¶ 19    After engaging in motion practice and discovery, on August 22, 2023, Potomac filed a motion for summary judgment on its third amended complaint, claiming that the facts were undisputed and that it was entitled to judgment as a matter of law. Similarly, on October 23, 2023, Pezzola also filed a motion for summary judgment against Potomac, which asserted that Potomac never held title to the property and therefore could not perform its obligations under the March contract. Pezzola pointed to the fact that Potomac's purchase of the property from Sanchez never closed, ultimately leading to a lawsuit by Potomac against Sanchez.

¶ 20    On February 21, 2024, the circuit court entered an order denying Potomac's motion for summary judgment and granting Pezzola's motion for summary judgment. The circuit court found that "it is clear from the Record that Potomac was unable to convey title to the contracted for lots at the purported closing date" as a result of Sanchez's refusal to convey the property to Potomac. Accordingly, the circuit court found that Potomac failed to establish that it would

have been able to transfer ownership of the property on March 21, 2019, and that summary judgment in favor of Pezzola was appropriate.

¶ 21    Potomac filed a motion to reconsider, which was denied.

¶ 22                                *Motions for Leave to Amend*

¶ 23    On June 5, 2024, Potomac filed a motion for leave to file an amended answer to Pezzola's counterclaim, seeking to add a counterclaim of its own alleging improper termination of the April contract. Specifically, Potomac claimed that Pezzola improperly terminated the April contract by failing to send notice by regular mail in addition to e-mail, as required by the contract. As such, Potomac requested to file an amended answer to include a counterclaim "for Pezzola's improper termination of the contract, which can be construed as a breach of contract." In addition, on the same day, Potomac filed a motion for leave to file a fourth amended complaint to add a count for anticipatory repudiation of a contract, which did not require it to establish its own performance under the contract.

¶ 24    Both of Potomac's motions were denied. As to Potomac's motion for leave to amend its answer, the circuit court found that "Potomac cannot overcome the fact that it never had the ability to transfer the lots that were contracted for. Although Pezzola may not have followed every provision of the contract, Potomac breached first by failing to have the ability to transfer the lots contracted for, as the Court previously found." As such, Potomac's proposed amendment "would not further the ends of justice."

¶ 25    After the denial of its motion for leave to amend its answer, Potomac filed another motion for leave to file an amended answer on August 19, 2024, seeking to add factual detail to its prior answer concerning Pezzola's failure to comply with the April contract's requirements concerning e-mailed notices.

8

¶ 26                    *Motion for Summary Judgment—Counterclaim*

¶ 27         On September 9, 2024, Pezzola filed a motion for summary judgment with respect to his counterclaim, contending that he was entitled as a matter of law to the return of his earnest money deposit, as well as attorney fees and costs.

¶ 28         On February 14, 2025, the circuit court granted Pezzola's motion for summary judgment, finding that "Potomac entered into a contract that it knew or should have known that it could not fulfill. That failure to be able to close on the transaction is an immediate breach of the contract without further events needing to occur." The circuit court further found that "there is nothing that Pezzola could have done to further comply with the Contract," and that Potomac's argument that Pezzola was still required to perform even where Potomac had previously breached was "unreasonable and not required under the law." The circuit court accordingly found that there was no justification for Potomac's continued possession of Pezzola's earnest money and entered judgment in favor of Pezzola in the amount of $50,000 plus any accrued interest. The circuit court declined to rule on Pezzola's request for attorney fees but granted him leave to file a fee petition.

¶ 29                                *Fee Petition*

¶ 30         On March 10, 2025, Pezzola filed a petition for attorney fees and costs pursuant to the terms of the April contract, requesting a total award of $136,016.21. On May 14, 2025, the circuit court granted Pezzola's petition, awarding him the total amount sought. The circuit court also found that, given the resolution of all matters between Potomac and Pezzola, the order represented a final judgment between the parties pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) and that there was no just reason for delaying either enforcement or appeal or both.

¶ 31    Potomac timely filed a notice of appeal, and this appeal follows.[2]

¶ 32                                    ANALYSIS

¶ 33    On appeal, Potomac contends that the circuit court erred in granting summary judgment to Pezzola instead of Potomac, in denying Potomac's post-summary judgment motions to amend, and in awarding Pezzola attorney fees. We consider each argument in turn.

¶ 34                              *Summary Judgment*

¶ 35    The circuit court in this case granted Pezzola summary judgment on both Potomac's third amended complaint and on Pezzola's counterclaim. A circuit court is permitted to grant summary judgment only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2024). The circuit court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a circuit court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 36    Summary judgment is a drastic measure and should be granted only if the movant's right to judgment is clear and free from doubt. *Id.* Mere speculation, conjecture, or guess, however, is insufficient to withstand summary judgment. *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden

_____

[2] We observe that Potomac indicates that we have appellate jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), which governs appealability of final judgments. The circuit court's order, however, did not resolve the claims against Sak, who remained a defendant. As such, the proper basis for our jurisdiction is Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), which governs appealability of final judgments which do not dispose of an entire proceeding.

of proof either by affirmatively demonstrating that some element of the case must be resolved in his favor or by establishing that there is an absence of evidence to support the nonmoving party's case. *Id.* The purpose of summary judgment is not to try an issue of fact but to determine whether a triable issue of fact exists. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (citing *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). Where, as here, the parties file cross-motions for summary judgment, "they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The filing of cross-motions for summary judgment, however, does not establish that there is no issue of material fact, nor does it obligate the court to render summary judgment. *Id.* We may affirm on any basis appearing in the record, regardless of whether or not the circuit court relied on that basis. *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34.

¶ 37                                  Summary Judgment on Third Amended Complaint

¶ 38         With respect to the third amended complaint, Potomac contends that the circuit court erred in denying its motion for summary judgment and in granting Pezzola's motion for summary judgment based on its finding that Potomac could not provide title to the property at the time of the scheduled March 21, 2019, closing. Potomac argues that, since Pezzola and Sak canceled the closing prior to the time that Potomac's performance was due, Potomac never breached the March contract.

¶ 39         Substantial performance is a necessary element of a breach of contract claim. *PML Development LLC v. Village of Hawthorn Woods*, 2023 IL 128770, ¶ 50. Thus, a party which itself has breached a contract generally may not seek to enforce the contract against the other party. See *id.* In the context of real estate, however, it has long been the law that a seller is not required to have title to the property at the time of the execution of the contract; it is the promise

11

to convey title which forms the basis of the contract. See, *e.g.*, *White v. Bates*, 234 Ill. 276, 278 (1908); *Crum v. Krol*, 99 Ill. App. 3d 651, 656 (1981); *Franklin v. Nanavati*, 2020 IL App (2d) 190710, ¶ 26. "It is sufficient if, when the specified time arrives, he is able to tender, and does tender, a deed as required by his contract." *White*, 234 Ill. at 278. Potomac claims that here, where "the specified time" (*i.e.*, the closing date) never arrived, the circuit court erred in finding that it was unable to satisfy its obligations under the March contract.

¶ 40    After carefully examining the record on appeal, we agree with Potomac that it is not indisputably clear that it was unable to satisfy its obligations under the March contract. There is no dispute that Sanchez owned the properties at the time of the execution of the March contract and that Sanchez ultimately never conveyed the properties to Potomac. Those, however, are not the relevant questions. The *only* question is whether Potomac was able to convey the properties to Pezzola and/or Sak *on March 21, 2019*. See *id.* There is no evidence in the record demonstrating that it would have been unable to do so, since the closing was canceled prior to the time that Potomac was required to perform and there is otherwise nothing indicating an impossibility of performance.

¶ 41    Pezzola's focus on later developments in the Potomac-Sanchez relationship is unavailing, as their subsequent communications have no bearing on whether the initial closing could have occurred. Similarly, we find Pezzola's suggestion unpersuasive that Potomac's failure to take the initial steps in the closing process with Sanchez indicated that it was not prepared to close on the March contract. What Potomac would—or would not—have done had the March contract proceeded to closing is pure speculation. The only facts which are affirmatively demonstrated by the record are (1) that Potomac and Sanchez had a contract for Potomac to purchase the properties from Sanchez and (2) that Potomac had a contract to sell those

properties to Pezzola and/or Sak on March 21, 2019. We simply cannot say, on the record before us, that Potomac would not have been able to perform as a matter of law. As such, summary judgment in Pezzola's favor should not have been granted. See *Outboard Marine Corp.*, 154 Ill. 2d at 102 (summary judgment should be granted only when the movant's right to judgment is "clear and free from doubt").

¶ 42    This does not necessarily mean, however, that Potomac's motion for summary judgment should have been granted. Potomac's breach of contract claim was based on Pezzola and Sak canceling the scheduled closing. "Under the law of anticipatory repudiation, when one party to a contract repudiates his obligations before the time performance is due, the other party may elect to treat the repudiation as a breach and sue immediately for damages." *Yale Development Co. v. Aurora Pizza Hut, Inc.*, 95 Ill. App. 3d 523, 526 (1981). Here, there is no dispute that the buyers canceled the scheduled closing and Pezzola does not contend that this cancellation was permitted by the contract. Thus, the cancellation could be interpreted as a breach of the March contract. We find, however, that the parties' subsequent conduct raises a question of fact as to whether any breach was treated as, at most, a partial breach or was otherwise excused by Potomac.

¶ 43    Under the partial breach doctrine, where a party to a contract elects to continue performing despite the other party's material breach, the nonbreaching party remains bound to its obligation to perform. *PML Development LLC*, 2023 IL 128770, ¶ 57. In addition, a party to a contract may waive its rights by failing to enforce them against the breaching party. See, *e.g.*, *Wald v. Chicago Shippers Ass'n*, 175 Ill. App. 3d 607, 621 (1988) (finding waiver where the plaintiff was aware of the defendants' breach but failed to take any action other than verbally informing the defendants of their alleged breaches). In this case, the reason for the cancellation

13

of the March contract was the buyers' desire to purchase different lots. While Potomac alleged in its third amended complaint that "[d]espite having no obligation to do so, and without waiving any rights it had under the Contract, Potomac attempted to accommodate the new request," the record does not contain any evidence as to whether Potomac communicated its non-waiver to either Pezzola or Sak or otherwise took any action to make clear that the later negotiations were separate from the March contract. As we may affirm the circuit court's judgment on any basis supported by the record (see *Village of Bartonville*, 2017 IL 120643, ¶ 34), we find that the presence of questions of fact as to the existence of a material breach by Pezzola supports the circuit court's denial of Potomac's motion for summary judgment.

¶ 44                    Summary Judgment on Counterclaim

¶ 45        Potomac also contends that the circuit court erred in granting summary judgment on Pezzola's counterclaim. In his counterclaim, Pezzola alleged that Potomac breached the April contract by failing to return his $50,000 earnest money deposit. The circuit court granted Pezzola's motion for summary judgment, finding that he was entitled to the return of the earnest money where "Potomac entered into a contract that it knew or should have known that it could not fulfill," characterizing Potomac's conduct as "an immediate breach of the contract without further events needing to occur." On appeal, Potomac raises two arguments concerning the circuit court's ruling. First, it claims that the April contract was not a valid contract and, second, maintains that even if it was, the $50,000 was not refundable where Pezzola did not comply with its terms.

¶ 46        We have no need, however, to address the merits of Potomac's claims on appeal. Given our conclusion as to the first grant of summary judgment, we must similarly find that summary judgment was not appropriate as to Pezzola's counterclaim. The circuit court granted summary

judgment on the counterclaim where it determined that Potomac's prior breach excused Pezzola's performance. Under the "first-to-breach rule," a party's duty to perform is excused if the other party materially breaches the agreement first. *PML Development*, 2023 IL 128770, ¶ 50. The circuit court thus found that, where Potomac was first to breach, Pezzola's performance was excused. As we have explained, however, questions of fact remain as to whether Potomac breached its obligations under the March contract.[3] Similar questions exist as to whether Pezzola breached his obligations under either contract. We further observe that, with respect to the counterclaim, Pezzola's breach of contract claim was based on the failure to return the earnest money deposit pursuant to the April contract—he did not allege that Potomac breached the April contract by failing to obtain title. There are thus numerous questions of fact concerning the April contract, including the relationship of the April contract to the March contract and its overall validity, which prevent judgment as a matter of law. Accordingly, we reverse the circuit court's grant of summary judgment on the counterclaim, as well.

¶ 47                                  *Attorney Fees*

¶ 48        Potomac next argues that the circuit court erred in awarding Pezzola attorney fees. Illinois courts generally follow the "American Rule," which provides that a party must bear its own attorney fees and costs, absent statutory authority or a contractual agreement. *Bank of America v. WS Management, Inc.*, 2015 IL App (1st) 132551, ¶ 119. In this case, the parties agree that any entitlement to attorney fees would be contractual, not statutory.

---

[3] While the circuit court did not explain whether it was finding breach under the March contract or the April contract (or both), its reference to its prior findings and its statement that Potomac "immediate[ly]" breached the contract suggest that it was referring to the parties' original agreement under the March contract.

¶ 49    The rider to the April contract provides that, in the event of a seller breach, the purchaser is entitled to a refund of the earnest money and that the prevailing party in any action related to any breach or threatened breach of the contract " 'will be entitled to recover from the other party all reasonable legal fees and expenses incurred by it in enforcing its rights under the Contract.' " Based on our earlier determinations that summary judgment was inappropriate in this case, we vacate the award of attorney fees, as any argument concerning entitlement to attorney fees is premature.

¶ 50    *Other Motions*

¶ 51    As a final matter, Potomac challenges the circuit court's denial of its post-summary judgment motions to amend its complaint and its counterclaim. Given our reversal of the circuit court's grants of summary judgment, however, we have no need to consider these arguments. On remand, the parties are free to raise any arguments or seek any amendments which would be appropriate at that stage of the proceedings, and our decision should not be read as opining as to the merits of any such matters.

¶ 52    CONCLUSION

¶ 53    For the reasons set forth above, we reverse the circuit court's grants of summary judgment in favor of Pezzola, affirm its denial of Potomac's summary judgment motion, vacate the attorney fee award, and remand for further proceedings.

¶ 54    Reversed in part, affirmed in part, and vacated in part; cause remanded.